# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 44376-2016

| | | |
|---|---|---|
| IN THE MATTER OF THE TERMINATION OF THE PARENTAL RIGHTS OF: | ) ) ) ) ) | Boise, December 2016 Term |
| | | 2016 Opinion No. 155 |
| JANE DOE (2016-31), | ) ) | Filed: December 22, 2016 |
| Respondent-Appellant. | ) ) ) | Stephen W. Kenyon, Clerk |

Appeal from the Magistrate Court of the Fifth Judicial District of the State of Idaho, in and for Lincoln County. Hon. Jennifer L.K. Haemmerle, Magistrate Judge.

The judgment of the magistrate court is affirmed.

Jeremy Pittard, Lincoln County Public Defender, Burley, argued for appellant.

James T. Baird, Deputy Attorney General, Twin Falls, argued for respondent Idaho Department of Health and Welfare.

John B. Lothspeich; Williams, Meservy & Lothspeich, LLP; Jerome, argued for the Guardian Ad Litem.

---

EISMANN, Justice.

This is an appeal out of Lincoln County from a judgment of the magistrate court terminating a mother's parental rights in her three children. The only issue on appeal is the district court's denial of the appointment of a guardian ad litem for the mother. We affirm the judgment of the magistrate court.

## I.

## Factual Background.

The Lincoln County Sheriff took three children into shelter care on July 10, 2013, pursuant to Idaho Code section 16-1608(1) on the ground that the children were endangered in their surroundings and that prompt removal was necessary to prevent serious physical or mental injury to the children. On the same day, the prosecuting attorney filed a petition under the Child

Protective Act ("CPA") and the magistrate court appointed a public defender to represent the children's mother ("Mother") and another public defender to represent the children's father ("Father"). On the following day, the parties stipulated that the children had an unstable home environment and a lack of education, and on July 24, 2013, the court entered an order placing the children in the custody of the Idaho Department of Health and Welfare ("Department") pending the adjudicatory hearing. The adjudicatory hearing was held on August 21, 2013. Mother did not appear, but her counsel was present as was the children's father and his counsel. Based upon the stipulation to certain evidence by the parties present and the court taking judicial notice of two reports, the court found that the children were within the purview of the CPA. It ordered that legal custody of each of the children was vested in the Department until each child's eighteenth birthday.

On May 29, 2015, the Department filed a petition to terminate the parental rights of Mother and Father. The evidentiary hearing on that petition was held on March 29 and 30, 2016. On the morning of the first day of the hearing, Mother's counsel, Mr. Pittard, stated that Mother requested a continuance because she did not feel she had had enough time to speak with him. He also stated that he would like the magistrate court to determine whether a guardian ad litem should be appointed for Mother pursuant to Idaho Code section 16-2007(5). The magistrate court denied the requested continuance and the appointment of a guardian ad litem. Based upon the evidence presented during the hearing, the court found that the parental rights of Mother and of Father should be terminated on the ground that they each had neglected the children and that termination of their parental rights was in the best interests of the children. The court entered its judgment on June 21, 2016, and an amended judgment on July 21, 2016. Mother timely appealed, but Father did not appeal. The factual basis for the court's findings need not be addressed because Mother has not challenged the court's findings of fact and conclusions of law on appeal.

## II.

### Did the Magistrate Court Err in Failing to Appoint a Guardian Ad Litem for Mother?

On the morning of the evidentiary hearing on the petition to terminate Mother's parental rights, her counsel, Mr. Pittard, requested that the magistrate court determine whether Mother was incompetent so that a guardian ad litem would need to be appointed for her. The request for

appointment of a guardian ad litem for Mother was based upon Idaho Code section 16-2007(5) which states:

> When the termination of the parent and child relationship is sought and the parent is determined to be incompetent to participate in the proceeding, the court shall appoint a guardian ad litem for the alleged incompetent parent. The court may in any other case appoint a guardian ad litem, as may be deemed necessary or desirable, for any party.

On May 29, 2013, Mother had been involuntarily committed to the custody of the Idaho Department of Health and Welfare based upon a court finding that she was suffering from a mental illness, was likely to injure herself or others, and lacked the capacity to make informed decisions about her treatment. On July 7, 2013, that commitment was terminated because the conditions justifying the commitment were found to no longer exist. The petition to terminate Mother's parental rights was filed on May 29, 2015, almost two years after Mother's commitment was terminated. Thus, at the time this proceeding was commenced, Mother was not determined to be incompetent.

Mother contends on appeal that once a petition is filed to terminate a parent's parental rights, the trial court is required to make a competency determination. That is not what the statute provides. It simply provides that when such a determination is made, the court is required to appoint a guardian ad litem. No determination was requested in this case until the morning of the evidentiary hearing. In addition, incompetency in a termination proceeding does not have the same consequences as incompetency in a criminal proceeding. In a criminal case, a defendant determined to be incompetent cannot "be tried, convicted, sentenced or punished for the commission of an offense so long as such incapacity endures." I.C. § 18-210. In a termination case, a guardian ad litem must be appointed for the parent but the proceedings can proceed.

Mother was represented by counsel throughout the CPA proceedings. In fact, Mr. Pittard had been appointed to represent her on May 15, 2015, near the end of the CPA proceedings. Court minutes for a hearing on July 1, 2015, show that Mr. Pittard was also representing Mother in a misdemeanor criminal proceeding in Jerome County.

The petition to terminate Mother's parental rights was filed in the same case that had begun as a CPA proceeding, and the petition to terminate Mother's parental rights was served upon Mr. Pittard. He withdrew as her counsel on July 6, 2015, and another attorney was appointed to represent her in the termination proceedings. Mr. Pittard was reappointed to

represent her on October 19, 2015, after the other attorney and mother failed to appear on the first scheduled termination hearing and it was determined that he was no longer practicing law.

After Mr. Pittard asked the magistrate court to determine whether Mother was competent to proceed and, if not, to appoint a guardian ad litem for her, Mother was called as a witness and examined by Mr. Pittard and counsel for the other parties. Idaho Code section 16-2007(5) does not define the word "incompetent." In context, it is incompetence "to participate in the proceeding." Therefore, we interpret it to have the same meaning as in a criminal case: the parent's lack of capacity to understand the proceedings against him or her or to assist in his or her own defense. *Ridgley v. State*, 148 Idaho 671, 677, 227 P.3d 925, 931 (2010). There is a difference between lack of capacity to understand the proceedings and to assist counsel and the unwillingness to participate in the proceedings or to assist counsel. From the magistrate court's comments, it is apparent that it used this same standard in evaluating whether Mother was incompetent.

The court stated that Mother "obviously has an understanding of the court proceedings, has had access to counsel, [and] by her own admissions is understanding of the nature of the court action." In subsequent written findings, the court wrote Mother "was able to identify the nature of the proceedings as a termination hearing to terminate her parental rights," that she "knew Mr. Pittard was her attorney," and that she "did not want him to represent her, but no other attorney had appeared." The court found that Mother's "participation at numerous court hearings, starting with her own instigation of allegations against [Father] in protection order proceedings on July 10, 2013 which precipitated the instant action" showed that Mother "clearly knew how to access the court system and did so then without assistance of counsel." The court noted that Mother "has been diagnosed with schizophrenic disorder, but it could not find "that a diagnosis of a mental illness immediately and irrevocably qualifies a person as incompetent." The court concluded:

> [Mother] participated in this action; had counsel appointed throughout to represent her interests; had the services of her physician; had the services of the Department available to her; and was observed throughout the proceedings by both court and counsel. At no time was [Mother] determined to be incapable of understanding and/or participating in the proceedings.

4

Indeed, the record shows that on July 1, 2015, Mr. Pittard was representing Mother in a criminal case in Jerome County, and there is no indication that he raised the issue of her competence in that proceeding.

The magistrate court observed Mother in court and heard her testify. There was no other testimony offered with respect to Mother's competence, including no expert testimony. "It is the province of the trial court to determine the credibility of witnesses, the weight to be given their testimony, and the inferences to be drawn from the evidence." *KMST, LLC v. Cnty. of Ada*, 138 Idaho 577, 581, 67 P.3d 56, 60 (2003). "A trial court's findings of fact will not be set aside on appeal unless they are clearly erroneous." *Camp v. East Fork Ditch Co., Ltd.*, 137 Idaho 850, 856, 55 P.3d 304, 310 (2002). "It is the responsibility of the trial court to judge the credibility of witnesses and weigh conflicting evidence." *Greenfield v. Wurmlinger*, 158 Idaho 591, 598, 349 P.3d 1182, 1189 (2015). Mother has not shown that the magistrate court's findings regarding Mother's competence are clearly erroneous. "[A] defendant parent may have a mental illness or deficiency and still be competent for purposes of the proceeding such that a guardian ad litem is not necessary." *Doe I v. Doe*, 138 Idaho 893, 905, 71 P.3d 1040, 1052 (2003).

Idaho Code section 16-2007(5) also provides that "[t]he court may in any other case appoint a guardian ad litem, as may be deemed necessary or desirable, for any party." Whether to appoint a guardian ad litem under that provision is within the discretion of the court. *Doe v. Doe*, 149 Idaho 392, 398–99, 234 P.3d 716, 722–23 (2010). "To determine whether a trial court has abused its discretion, this Court considers whether it correctly perceived the issue as discretionary, whether it acted within the boundaries of its discretion and consistently with applicable legal standards, and whether it reached its decision by an exercise of reason." *Reed v. Reed*, 137 Idaho 53, 57, 44 P.3d 1108, 1112 (2002). There has been no showing that the court abused its discretion in failing to appoint a guardian ad litem under this provision.

## III.

**Did the Magistrate Court Abuse Its Discretion in Denying the Motion for a Continuance?**

On the morning of the evidentiary hearing, Mr. Pittard stated that Mother has asked me to ask the Court for a continuance in the matter "based on the fact that she does not feel like she's had enough time to speak with me and to prepare for this at all." He then recounted difficulties he had had in contacting her. He learned of a court date she had in Jerome in December, and met

her there.  She said she would contact him in December, but failed to do so.  As the evidentiary hearing drew near, he made attempts to contact her, but she did not respond until a couple days before the hearing.

"The decision whether to grant a motion to continue trial is within a trial court's sound discretion."  *Everhart v. Washington Cnty. Rd. & Bridge Dep't*, 130 Idaho 273, 275, 939 P.2d 849, 851 (1997).  In denying Mother's motion for a continuance, the magistrate court stated

> Mr. Pittard, the court finds has been diligent in his representation and his efforts to find [Mother] because it appears that she has, to some extent, avoided contact with her own counsel.  . . . .
>
> And so at this point in time, given the fact that this matter is, in fact, already a continuance from the earlier trial date of October 13th of 2015, that it was a 5-month continuance, that Mr. Pittard has been active in this case for 5 months, I do not find that there's been any lack of diligence on his part, but I do find to the extent that [Mother] has failed to avail herself of counsel that that is exclusively her choice and her responsibility, and that will not be seen by the Court for basis of a continuance.

After the magistrate court denied the motion for a continuance, the first witness was called to testify.  During that witness's testimony, Mother voluntarily left the courtroom and did not return.  Under the circumstances in this case, there is no showing that the court abused its discretion in denying the motion for a continuance.

## III.
### Conclusion.

We affirm the judgment of the magistrate court.


Chief Justice J. JONES and Justices BURDICK, W. JONES and HORTON **CONCUR.**

6