**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 46520**

| | | |
|---|---|---|
| In the Interest of: Jane Doe, A Child Under Eighteen (18) Years of Age. | ) ) ) | |
| IDAHO DEPARTMENT OF HEALTH AND WELFARE, | ) ) | Filed: February 8, 2019 |
| | ) | |
| Petitioner-Respondent, | ) | Karel A. Lehrman, Clerk |
| | ) | |
| v. | ) ) | THIS IS AN UNPUBLISHED OPINION AND SHALL NOT |
| JOHN DOE, | ) | BE CITED AS AUTHORITY |
| | ) | |
| Respondent-Appellant. | ) ) | |

Appeal from the Magistrate Division of the District Court of the Fifth Judicial District, State of Idaho, Twin Falls County. Hon. Calvin H. Campbell, Magistrate.

Judgment terminating parental rights, affirmed.

Timothy J. Williams, Twin Falls, for appellant.

Hon. Lawrence G. Wasden, Attorney General; James T. Baird, Deputy Attorney General, Boise, for respondent.

_____

BRAILSFORD, Judge

Respondent, John Doe (Father), appeals from the magistrate's decision terminating Father's parental rights to his child, J.R. Father challenges the magistrate's findings that Father neglected J.R. and that it is in J.R.'s best interests to terminate Father's parental rights. He also asserts the magistrate abused its discretion in denying the motion for a continuance of the termination hearing. We affirm.

1

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

In September 2016, Father was working for and traveling with a carnival. For at least the preceding three years, Father had no contact with J.R. Meanwhile, J.R. was residing in a motel room with her mother (Mother). While J.R. was very ill with strep throat, Mother gave custody of J.R. to neighbors who were also residing in the same motel, one of whom was a registered sex offender. Shortly thereafter, on September 13, 2016, the neighbors took J.R. to the police department, which declared her to be in imminent danger, and the Idaho Department of Health and Welfare (Department) took custody of her. In October 2016, the Department developed a case plan for Father. The Department petitioned for termination of parental rights in December 2017, by which time J.R. had been in the Department's custody for more than fifteen months.

The magistrate held an evidentiary hearing in August 2018 to determine whether to terminate the parents' rights. At this hearing, Father was represented by legal counsel, but Father was not present. On the morning of the hearing, Father's counsel moved for a continuance because Father had traveled to California to attend his high school reunion and had not yet returned. The magistrate denied Father's motion. Following the hearing, the magistrate terminated the parents' rights. The magistrate found clear and convincing evidence that Father had neglected J.R. by failing to complete the case plan and that termination of Father's rights is in J.R.'s best interests.[1] Father timely appeals.

## II.

## STANDARD OF REVIEW

A parent has a fundamental liberty interest in maintaining a relationship with his child. *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *Doe v. State*, 137 Idaho 758, 760, 53 P.3d 341, 343 (2002). The Fourteenth Amendment to the United States Constitution protects this interest. *State v. Doe*, 144 Idaho 839, 842, 172 P.3d 1114, 1117 (2007). Due process must be met when terminating the parent-child relationship. *State v. Doe*, 143 Idaho 383, 386, 146 P.3d 649, 652 (2006). Because a fundamental liberty interest is at stake, a court may terminate a parent-child relationship only if that decision is supported by clear and convincing evidence. *Santosky v. Kramer*, 455 U.S. 745, 769 (1982); *see also* Idaho Code § 16-2009; *In re Doe*, 146 Idaho 759,

---

[1] The magistrate also terminated Mother's parental rights, and that termination is the subject of a separate appeal.

761-62, 203 P.3d 689, 691-92 (2009); *Doe*, 143 Idaho at 386, 146 P.3d at 652. Clear and convincing evidence is generally understood to be evidence indicating that the thing to be proved is highly probable or reasonably certain. *In re Doe*, 143 Idaho 188, 191, 141 P.3d 1057, 1060 (2006).

On appeal, this Court examines whether the magistrate's decision terminating parental rights is supported by substantial and competent evidence, which means evidence a reasonable mind might accept as adequate to support a conclusion. *Doe v. Doe*, 148 Idaho 243, 245-46, 220 P.3d 1062, 1064-65 (2009). The substantial evidence test also requires a greater quantum of evidence in cases, such as this case, where the magistrate's findings must be supported by clear and convincing evidence, instead of a mere preponderance. *Doe v. Doe*, 143 Idaho 343, 346, 144 P.3d 597, 600 (2006). Further, objectively supportable grounds must support the magistrate's termination decision. *Doe*, 143 Idaho at 346, 144 P.3d at 600. This Court is required to conduct an independent review of the record, but it must draw all reasonable inferences in favor of the magistrate's judgment because the magistrate has the opportunity to observe the witnesses' demeanor, to assess their credibility, to detect prejudice or motive, and to judge character. *Doe v. Doe*, 150 Idaho 46, 49, 244 P.3d 190, 193 (2010).

## III.

## ANALYSIS

### A.    Statutory Ground for Termination of Parental Rights

Implicit in the Termination of Parent and Child Relationship Act is the philosophy that, wherever possible, family life should be strengthened and preserved. I.C. § 16-2001(2). Section 16-2005 of the Idaho Code permits a party to petition the court for termination of the parent-child relationship when it is in the child's best interests and any one of the following five factors exist: (a) abandonment; (b) neglect or abuse; (c) lack of a biological relationship between the child and a presumptive parent; (d) the parent is unable to discharge parental responsibilities for a prolonged period that will be injurious to the health, morals, or well-being of the child; or (e) the parent is incarcerated and will remain incarcerated for a substantial period of time. Each statutory ground is an independent basis for termination. *Doe*, 144 Idaho at 842, 172 P.3d at 1117.

Section 16-2002(3)(b) defines "neglect" for purposes of terminating parental rights. Under this section, neglect includes any conduct defined by I.C. § 16-1602(31). Neglect also

occurs when the parent has failed to comply with the court's orders or the case plan in a Child Protective Act case, and the Department has had temporary or legal custody of the child for fifteen of the most recent twenty-two months. I.C. § 16-2002(3)(b)(i-ii). Failure to comply with the case plan and the court's orders mandating such compliance can form the basis for neglect as defined in I.C. § 16-2002(3)(b). *Idaho Dep't of Health & Welfare v. Doe*, 148 Idaho 832, 836, 230 P.3d 442, 446 (Ct. App. 2010). "[T]he trial court must find that the parent is responsible, whether directly or indirectly, for non-compliance with the requirements of the case plan." *Idaho Dep't of Health & Welfare v. Doe*, 161 Idaho 596, 600, 389 P.3d 141, 145 (2016).

As statutory grounds for termination, the magistrate found Father neglected J.R. by failing to comply with the case plan.[2] Specifically, the magistrate found that Father "failed multiple times to complete the most basic elements of the [case] plan" and "Father had failed to make any real progress on his case plan." Substantial and competent evidence supports these findings.

Father's most notable failure under the case plan is to maintain a safe and stable home. When the Department took custody of J.R. in September 2016, Father was working for and traveling with a carnival. About a year after the case plan started, Father moved to Idaho. Thereafter, Father lived with friends, who were growing marijuana, and then later lived in a shelter. Finally, a few months before the termination hearing in May 2018, Father began living with his mother in a trailer park. From time to time, other individuals also lived in this trailer, including one individual who was an alleged sex offender. At the hearing, Father presented limited proof of some income from temporary jobs, but he failed to show adequate income to maintain safe and stable housing. Father instead relied on his mother and his church to pay most of his living expenses.

Father had also failed to address his mental health needs as the case plan required. In particular, Father failed to address his anger issues, which persist. A Department social worker testified Father lives in "a very hostile home environment." There was also testimony that Father

---

[2] The magistrate's decision also suggests another statutory ground for termination, *i.e.*, Father's abandonment of J.R. *See* I.C. § 16-2005(1)(a) (identifying abandonment as statutory ground for termination). Father, however, only challenges the magistrate's conclusion that he neglected J.R. Because the evidence need only support one statutory ground for termination, we address only the ground Father challenges. *See, e.g.*, *Doe v. Doe*, 143 Idaho 343, 346, 144 P.3d 597, 600 (2006) (addressing only one statutory ground).

4

lost his temper about three weeks before the termination hearing and caused property damage to his mother's trailer. As a result of Father's inability to control his temper, an occupant of the trailer called the police. In addition to failing to manage his anger issues, Father has also failed to complete individual counseling and to demonstrate any parenting skills from the limited, online parenting class he took.

Father unsuccessfully challenges the magistrate's finding that Father failed to comply with the case plan. He concedes he "did not perform his obligations well during the first part of the case plan due to living out of state," but he argues that he "seriously applied himself to the tasks" later on. In support, Father argues he moved from California to Idaho; visited J.R.; secured employment; and established a safe, stable home.

While it is undisputed Father moved to Idaho and was present at scheduled visits with J.R., these facts alone are inadequate to refute the magistrate's conclusion that Father failed to make any "real progress" under the case plan, including maintaining an appropriate home. Contrary to Father's argument and as discussed above, there is substantial and competent evidence that Father failed to establish and maintain a safe, stable home and failed to secure adequate employment to provide for such housing.

Father also cites to certain testimony of the guardian ad litem and a Department social worker to support the argument that Father completed his case plan. Father, however, takes snippets of these witnesses' testimony out of context. Review of the testimony in its entirety shows that it is not helpful to Father. For example, the Department social worker testified that Father has made "very minimal" progress on the case plan, and the guardian ad litem testified Father has not completed the case plan. To the extent these witnesses may have made isolated statements that might be construed as favorable to Father, this Court defers to the trial court's ability to accurately weigh the evidence and assess credibility. *Doe v. Roe*, 133 Idaho 805, 809, 992 P.2d 1205, 1209 (1999).

## B. Best Interests of the Child

Once a statutory ground for termination has been established, the trial court must next determine whether it is in the best interests of the child to terminate the parent-child relationship. *In re Aragon*, 120 Idaho 606, 611, 818 P.2d 310, 315 (1991). When determining whether termination is in the child's best interests, the trial court may consider the parent's history with substance abuse, the stability and permanency of the home, the unemployment of the parent, the

5

financial contribution of the parent to the child's care after the child is placed in protective custody, the improvement of the child while in foster care, the parent's efforts to improve his or her situation, and the parent's continuing problems with the law. *In re Doe*, 159 Idaho 192, 198, 358 P.3d 77, 83 (2015); *In re Doe*, 156 Idaho 103, 111, 320 P.3d 1262, 1270 (2014). A finding that it is in the best interests of the child to terminate parental rights must still be made on objective grounds. *In re Doe*, 152 Idaho 953, 956-57, 277 P.3d 400, 403-04 (Ct. App. 2012).

Father challenges the magistrate's conclusion that termination of Father's parental rights is in J.R.'s best interests. Father's challenge is limited, however, to the magistrate's reliance on the fact that J.R. had been in the Department's custody for twenty-five months, *i.e.*, from September 2016 until the magistrate's decision in October 2018. Specifically, Father argues "simply because the minor child has been in the care and custody of the [Department] for a significant period of time, that alone does not create a presumption that the termination is in the best interests of the child[]." Contrary to Father's suggestion, the magistrate neither relied exclusively on the Department's lengthy custody of J.R. nor presumed J.R.'s best interests based on that fact; rather, the magistrate also found that Father does not have stable housing or full-time employment, has not supported J.R. financially, and has not attempted to improve his position by completing the treatment required by the plan.

The magistrate also considered J.R.'s improvement in foster care, finding J.R. "has made significant progress in her current place." As noted above, both the guardian ad litem and the Department social worker testified termination, in their opinion, is in J.R.'s best interests. According to their testimony, J.R. is thriving in foster care and has shown positive changes in her health, demeanor, and behavior; is improving in school as a result of her foster parents' involvement and stable environment; and has a strong bond with her foster parents. In contrast, there was testimony that, during Father's visits, J.R. was not excited to see him and had little interaction with him. The magistrate found Father has no real bond with J.R.

Substantial and competent evidence supports the magistrate's findings that J.R.'s best interests are served by termination of Father's parental rights and that Father neglected J.R. by failing to comply with the case plan.

## C.    Motion for Continuance

Father also challenge's the magistrate's denial of the motion for a continuance of the termination hearing. On the morning of the hearing, Father's counsel moved for a continuance. In support, Father's counsel informed the magistrate as follows:

> Counsel:   I received a call at about 4:30 yesterday afternoon.   Apparently, [Father] went on a vacation to California, and in the call he told me that his phone did not remind him that he had an airplane flight yesterday. So the best we could do is tell him to get on the next one, but I don't think--I think the earliest he can get here is probably this afternoon.
>
> Magistrate: Okay.
>
> Counsel: So for the record, I need to make a motion to continue the trial.
>
> Magistrate: All right. Any other basis for the continuance?
>
> Counsel: Just that he's missing.

Denying the motion, the magistrate reasoned:

> [T]his matter has been noticed up for months and the parties, including the parents, have been given a very long period of time of notice of this hearing to be prepared to have witnesses here, to make arrangements to be here, and missing a flight to be here is not an adequate excuse from being here.
>
> . . . .
>
> [Father] knew about today's hearing, knew about needing to be here, [and] had it in his phone. That is not excusable. I mean, he needs to just get here as soon as he can. His counsel is here and can represent him. We're going to proceed.

Thereafter, the hearing proceeded into the afternoon, but Father never appeared.

Whether to grant Father's motion to continue a termination hearing is within the magistrate's sound discretion. *In re Doe*, 161 Idaho 393, 397, 386 P.3d 916, 920 (2016). Review of the denial requires this Court to conduct a multi-tiered inquiry to determine whether the lower court: (1) correctly perceived the issue as one of discretion; (2) acted within the boundaries of such discretion; (3) acted consistently with any legal standards applicable to the specific choices before it; and (4) reached its decision by an exercise of reason. *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018).

Challenging the magistrate's denial of Father's motion for a continuance, Father simply asserts that "the court did not perceive the matter as one of discretion, at least there is no such record. There is no record of the court attempting to work within the outer boundaries or

consistently with legal standards and no record of reaching a decision by an exercise of reason." Father's conclusory assertion is unpersuasive.

The magistrate's analysis and reasoning in the present case is similar to *In re Doe*, 161 Idaho at 397, 386 P.3d at 920. In that case, the Idaho Supreme Court affirmed the magistrate's denial of Doe's motion for a continuance based upon her purported inability to speak with her attorney in preparation for the hearing. *Id.* The magistrate noted that Doe's attorney had been diligent in his representation and had made attempts to contact Doe, but she did not respond until a couple of days before the hearing. *Id.* Based on these facts, the magistrate reasoned that Doe's failure to avail herself of counsel was exclusively her choice and her responsibility and not a basis for a continuance. *Id*.

Similarly, the magistrate in this case reasoned that Father had ample notice of the hearing, was responsible to be present at the hearing, and made the choice not to attend: "[Father] knew about today's hearing, knew about needing to be here, [and] had it in his phone. That is not excusable." Moreover, Father's counsel was present at the hearing, cross-examined the Department's witnesses, and called a witness on Father's behalf. Under these circumstances, we cannot conclude the magistrate abused its discretion.

**IV.**

**CONCLUSION**

The magistrate did not abuse its discretion when denying Father's motion for a continuance. Additionally, substantial and competent evidence supports the magistrate's conclusion that Father neglected J.R. by failing to comply with the case plan; that J.R. has been continuously in the Department's custody for more than fifteen months; and that termination of his parental rights is in J.R.'s best interests. Accordingly, we affirm the judgment terminating Father's parental rights.

Chief Judge GRATTON and Judge LORELLO **CONCUR**.

8